UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X   Docket No. 1:23-cv-8243
MUCHMORE & ASSOCIATES PLLC,

       Plaintiff,

-against-                                                              **COMPLAINT**

THINQ TECHNOLOGIES, INC. d/b/a
COMMIO, LLC, and AARON LEON,

       Defendants.                              Jury Trial Demanded.
-------------------------------------------------------X

Plaintiff Muchmore & Associates PLLC, as and for its Complaint against thinQ Technologies, Inc. d/b/a commio, LLC and Aaron Leon, alleges as follows:

## INTRODUCTION

1. This action seeks recovery of direct inbound dialing number 1-917-932-0299 ("the DID") and monetary damages and attorneys' fees resulting from its conversion in violation of Title 47, Chapter 5 of the United States Code and its enabling regulations.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1332.

3. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff Muchmore & Associates PLLC is a professional limited liability company organized and existing under the laws of the State of New York for the professional purpose of practicing law with its office located at 84 Withers Street, 4th Floor, Brooklyn, New York 11211.

5. Upon information and belief, thinQ Technologies, Inc. d/b/a commio, LLC ("commio") is a corporation organized and existing under the laws of the State of Delaware, with its principal office located at 5420 Wade Park Blvd., Suite 100, Raleigh, North Carolina 27607, and with the trade name commio, LLC registered to with the Wyoming Secretary of State.

6. Upon information and belief, Aaron Leon is the chief executive officer of thinQ Technologies, Inc. d/b/a commio, LLC with his principal residence in the State of North Carolina and his principal office at 5420 Wade Park Blvd., Suite 100, Raleigh, North Carolina 27607.

## FACTS COMMON TO ALL CAUSES OF ACTION

7. In 2014, Plaintiff's predecessor in interest, Andrew Muchmore d/b/a Law Office of Andrew Muchmore, purchased the DID from DID Logic PTE, LTD. ("DID Logic"), a corporate entity based in Singapore.

8. Plaintiff has purchased voice over internet protocol ("VOIP") services from DID Logic in connection with the DID continuously since 2014.

9. Upon information and belief, DID Logic was initially a reseller of VOIP services for a company called "Teli", which was acquired by commio in 2021.

10. Upon information and belief, commio and Teli have been the ultimate servicers of the DID since 2014.

11. The DID has been used as the primary phone number of Plaintiff and its predecessor in interest since 2014 is widely known Plaintiff's clients and prospective clients.

12. The DID has been listed on the letterhead, website, advertisements and court filings of Plaintiff and its predecessor since 2014.

13. The DID is the primary means by which Plaintiff's clients and prospective clients contact Plaintiff regarding legal matters.

14. Plaintiff initially learned of Defendants' control over the DID through an unsuccessful attempt to port the DID to Grasshopper in or about May 2023 following reliability issues with the DID.

15. On or about October 17, 2023, Plaintiff stopped receiving calls through the DID but continued to be able to make outbound calls through it.

16. On October 18, 2023 Plaintiff submitted ticket number 293888 to DID Logic regarding its inability to receive calls through the DID.

17. In response to this ticket, DID Logic repeatedly stated that it was attempting to resolve the issue with its local carrier.

18. As a result of DID Logic's inability to resolve this issue with its local carrier, Plaintiff initially requested that DID Logic port the DID to another provider within its network.

19. When DID Logic failed to port the DID internally, Plaintiff created an account with Telnyx, LLC ("Telnyx").

20. On or about October 30, 2023, Plaintiff executed a Letter of Agency requesting that the DID be ported to it.

21. Telnyx submitted the Letter of Agency to Defendants, but Defendants did not port the DID.

22. On November 1, 2023, Plaintiff submitted a letter labeled Request and Authorization for porting to Defendants and DID Logic via email, but Defendant did not port the DID.

23. On November 3, 2023, Plaintiff received a phone call from Defendant's chief executive officer, Aaron Leon.

24. In this call, Aaron Leon described a dispute between Defendant and a Teli. As a result of that dispute, he indicated Defendant terminated the DID without notice to the Firm on October 17, 2023.

25. In the call, Aaron Leon requested that Plaintiff provide documentation of its ownership of the DID.

26. Plaintiff provided the requested documentation to Defendants by email on November 3, but Defendant did not port the DID.

27. On November 5, 2023, Plaintiff submitted a letter labeled Third Request for Porting of DID +1-917-932-0299 to Defendants and DID Logic via email, but Defendants did not port the DID.

28. Plaintiff has now been unable to receive calls through the DID from its clients, prospective clients, opposing counsel or chambers since October 17, 2023.

29. As of the date of this filing, Plaintiff remains able to place outbound calls using the DID.

30. Since October 18, 2023, calls to the DID would typically ring without any answer.

31. On November 5, 2023, calls to the DID were answered by a man with an Indian accent in what appeared to be a call center with many other sales agents audible in the background. The man offered a $100 gift certificate, but could not clarify what the certificate related to or what business he was engaged in.

32. In addition to the harm this has cause to the Plaintiff, this indicates the DID is being for telemarketing and possibly for illegal robocalls and/or scheme to defraud third parties by telephone.

33. On March 22, 2022, the Federal Communications Commission ("FCC") issued a document labeled "Official Correspondence from the Federal Communications Commission" to "Mr.

Aaron Leon Co-Founder & CEO thinQ Technologies, Inc. 5420 Wade Park Blvd. Suite 100 Raleigh, NC 27607 aaron@thinQ.com" stating "We have determined that thinQ Technologies, Inc. ("thinQ") is apparently originating and transmitting illegal robocall traffic on behalf of one or more of its clients."

34. The foregoing has caused significant economic damages and disruption to Plaintiff's business, including the loss of new business from marketing and referrals and lost attorney time.

35. If the DID is not promptly restored to Plaintiff, it could cause tremendous economic damages and irreparable non-economic harm, including interference in Plaintiff's ability to communicate with and effectively represent its clients.

36. Defendants' conduct was willful and contumacious, made in knowing violation of applicable law, and part of a pattern of conduct targeted at the public generally.

## FIRST CAUSE OF ACTION

### (47 U.S.C. § 206 and 207)

37. Plaintiff repeats and realleges the foregoing allegations with the same force and effect as if set forth at length herein.

38. commio is a "common carrier" and "local exchange carrier" within the meaning of Title 47, Chapter 5 of the United States Code.

39. Defendants have controlled and serviced the DID since at least 2021.

40. Defendants and the predecessors or affilates, including Teli, have controlled and serviced the DID since at least 2014.

41. Pursuant to 47 U.S.C. Sec. 206:

    In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

42. Pursuant to 47 U.S.C. Sec. 207:

    Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be

liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies

43. Pursuant to 47 U.S.C. § 251(b), Obligations of All Local Exchange Carriers:

    Each local exchange carrier has the following duties:

    (1) Resale: The duty not to prohibit, and not to impose unreasonable or discriminatory conditions or limitations on, the resale of its telecommunications services.

    (2) Number portability: The duty to provide, to the extent technically feasible, number portability in accordance with requirements prescribed by the Commission.
    (3) Dialing parity: The duty to provide dialing parity to competing providers of telephone exchange service and telephone toll service, and the duty to permit all such providers to have nondiscriminatory access to telephone numbers, operator services, directory assistance, and directory listing, with no unreasonable dialing delays.

    (4) Access to rights-of-way: The duty to afford access to the poles, ducts, conduits, and rights-of-way of such carrier to competing providers of telecommunications services on rates, terms, and conditions that are consistent with section 224 of this title…

44. Pursuant to 47 U.S.C. § 202, Discriminations and preferences:

    (a) Charges, services, etc.: It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

    (b) Charges or services included: Charges or services, whenever referred to in this chapter, include charges for, or services in connection with, the use of common carrier lines of communication, whether derived from wire or radio facilities, in chain broadcasting or incidental to radio communication of any kind.

45. Pursuant to 47 C.F.R. 52.34, Obligations regarding local number porting to and from interconnected VoIP or Internet-based TRS providers:

    (a) An interconnected VoIP or VRS or IP Relay provider must facilitate an end-user customer's or a Registered Internet-based TRS User's valid number portability request, as it is defined in this subpart, either to or from a telecommunications carrier or an interconnected VoIP or VRS or IP Relay provider. "Facilitate" is defined as the interconnected VoIP or VRS or IP Relay provider's affirmative legal obligation to take all

    steps necessary to initiate or allow a port-in or port-out itself or through the telecommunications carriers, if any, that it relies on to obtain numbering resources, subject to a valid port request, without unreasonable delay or unreasonable procedures that have the effect of delaying or denying porting of the NANP-based telephone number.

46. Pursuant to 47 C.F.R. § 52.35, Porting Intervals:

    (a) All telecommunications carriers required by the Commission to port telephone numbers must complete a simple wireline-to-wireline or simple intermodal port request within one business day

47. Pursuant to 47 C.F.R. § 63.71, Procedures for discontinuance, reduction or impairment of service by domestic carriers:

    Any domestic carrier that seeks to discontinue, reduce or impair service shall be subject to the following procedures:

    (a) The carrier shall notify all affected customers of the planned discontinuance, reduction, or impairment of service and shall notify and submit a copy of its application to the public utility commission and to the Governor of the State in which the discontinuance, reduction, or impairment of service is proposed; to any federally-recognized Tribal Nations with authority over the Tribal lands in which the discontinuance, reduction, or impairment of service is proposed; and also to the Secretary of Defense, Attn. Special Assistant for Telecommunications, Pentagon, Washington, DC 20301. Notice shall be in writing to each affected customer unless the Commission authorizes in advance, for good cause shown, another form of notice. For purposes of this section, notice by email constitutes notice in writing.

48. Pursuant to 47 C.F.R. § 63.62, Type of discontinuance, reduction, or impairment of telephone service requiring formal application:

    Authority for the following types of discontinuance, reduction, or impairment of service shall be requested by formal application containing the information required by the Commission in the appropriate sections to this part, except as provided in paragraph (c) of this section, or in emergency cases (as defined in § 63.60(b)) as provided in § 63.63:

    (a) The dismantling or removal of a trunk line (for contents of application see § 63.500) for all domestic carriers and for dominant international carriers except as modified in § 63.19;

    (b) The severance of physical connection or the termination or suspension of the interchange of traffic with another carrier (for contents of application, see § 63.501)…

    (e) Any other type of discontinuance, reduction or impairment of telephone service not specifically provided for by other provisions of this part…

49. Pursuant to 47 C.F.R. § 52.15(f)(1)(ii)

>Aging numbers are disconnected numbers that are not available for assignment to another end user or customer for a specified period of time. Numbers previously assigned to residential customers may be aged for no less than 45 days and no more than 90 days. Numbers previously assigned to business customers may be aged for no less than 45 days and no more than 365 days.

50. Defendants have violated the foregoing provisions of Title 47, Chapter 5 and enabling regulations promulgated by the FCC by failing to process the port request, improperly terminating interconnection, terminating service to the DID without notice to Plaintiff, and/or reassigning the DID to a new party without waiting the required 45 days.

51. As a result of the foregoing, Plaintiff is entitled to recover the DID and all resulting economic damages, punitive damages and attorneys' fees.

## SECOND CAUSE OF ACTION
### (Conversion)

52. Plaintiff repeats and realleges the foregoing allegations with the same force and effect as if set forth at length herein.

53. Plaintiff had the right to possess the DID.

54. Defendants assumed control over the DID without right or color of right and thereby interfered with the Plaintiff's property in a manner that infringed on the Plaintiff's rights.

55. As a result of the foregoing, Defendants are liable to Plaintiff for conversion in an amount to be determined at trial, but not less than $1,000,000.

## THIRD CAUSE OF ACTION
### (negligence)

56. Plaintiff repeats and realleges the foregoing allegations with the same force and effect as if set forth at length herein.

57. Defendants had a duty of care to Plaintiff and other end users of its services.

58. Defendants breached their duty of care by causing Plaintiff to become unable to receive calls on or about October 17, 2023 and failing to correct the problem or port the DID after reasonable notice.

59. Defendants' conduct was the direct and proximate cause of Plaintiff's loss.

60. Plaintiff suffered economic damages and harm to its business reputation as a result of the foregoing.

61. Defendants' conduct violated the above referenced laws and regulations and constitutes negligence per se.

62. As a result of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial, but not less than $1,000,000.

## FOURTH CAUSE OF ACTION
### (Injunction)

63. Plaintiff repeats and realleges the foregoing allegations with the same force and effect as if set forth at length herein.

64. If Defendants are not enjoined and compelled to comply with the foregoing statutes and regulations, Plaintiff and its clients may suffer irreparable harm from Plaintiff's inability to receive timely information about pending legal matters.

65. Since Defendants have a duty under the foregoing statutes and regulations to comply with Plaintiff's port request, to maintain interconnection with DID Logic, to notify Plaintiff before terminating service, and to wait 45 days before reassigned the DID, Plaintiff has a likelihood of success on the merits.

66. Since Plaintiff has used the DID as its primary phone number in connection with its performance of legal services since 2014, and since Defendants have no right to deny porting of the DID and no significant economic interest in continuing to control it, there is a balancing of the equities in Plaintiff's favor.

67. As a result of the foregoing, the Court should issue an injunction directing the Defendants to comply with its request to port the DID to Telnyx.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1) on its First Cause of Action, requiring Defendants to port the DID and awarding economic damages, punitive damages and attorneys' fees;
2) on its Second Cause of Action, awarding economic damages and punitive damages against Defendants in an amount to be determined at trial, but not less than $1,000,000;
3) on its Third Cause of Action, awarding economic damages and punitive damages against Defendants in an amount to be determined at trial, but not less than $1,000,000;
4) On its Fourth Cause of Action, granting an injunction requiring Defendants to comply with Plaintiff's request to port the DID; and
5) Granting such other and further relief as the Court seems just and equitable.

Dated: Brooklyn, New York
    November 6, 2023

**MUCHMORE & ASSOCIATES PLLC**

By: /s/   *Andrew Muchmore*               .
    Andrew Muchmore, Esq.
84 Withers Street, 4th Floor
Brooklyn, NY 11211
(917) 932-0299